**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**KATHY L. MARTINEZ,**

    **Plaintiff,**

v.                                                                                              No. CIV-12-0554 LAM

**CAROLYN W. COLVIN,[1] Commissioner
of the Social Security Administration,**

    **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's ***Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*** *(Doc. 21)*, filed October 1, 2012. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and *7*]. On December 3, 2012, Defendant filed a ***Response Brief of the Social Security [Administration]*** *(Doc. 22)*, and, on December 17, 2012, Plaintiff filed a ***Notice of Briefing Complete*** *(Doc. 23)*. The Court has considered Plaintiff's motion, Defendant's response, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Docs. 15, 16* and *17*]. For the reasons set forth below, the Court **FINDS** that

---

[1]Pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin, who is the new Commissioner of the Social Security Administration, was automatically substituted as the named defendant in this case in place of the former Commissioner, Michael J. Astrue.

the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's motion should be **DENIED**.

## I.  Procedural History

On September 7, 2006, Plaintiff filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), alleging that she became disabled on August 21, 2006. [*Doc. 15-8* at 2-4 and 8-10]. Plaintiff stated that she became disabled due to "[s]tomach cancer possible, severe pain, anxiety, depression." [*Doc. 15-9* at 7]. Both applications were denied at the initial level on March 12, 2007 (*Doc. 15-5* at 2-10) and at the reconsideration level on January 24, 2008 (*id.* at 12-17).  Pursuant to Plaintiff's request (*id.* at 18-19), on August 26, 2010, Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing. [*Doc. 15-3* at 27-66]. Plaintiff was represented by counsel and testified at the hearing (*id.* at 29, 33-57), and Vocational Expert Diane Weber (hereinafter "VE") also testified at the hearing (*id.* at 53-63).

On September 22, 2010, the ALJ issued her decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled. [*Doc. 15-3* at 11-21]. Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 7), and, on March 28, 2012, the Appeals Council denied Plaintiff's request for review (*id.* at 2-6), which made the ALJ's decision the final decision of the Commissioner. On May 22, 2012, Plaintiff filed her complaint in this case. [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The

possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### **III. Applicable Law and Sequential Evaluation Process**

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on October 5, 1963.  [*Doc. 15-8* at 2].  Plaintiff completed one year of college.  [*Doc. 15-9* at 11].  Plaintiff has worked as a factory worker, waitress and cashier.  *Id.* at 8.  Plaintiff alleges that she became disabled on August 21, 2006, and she is unable to work because of possible stomach cancer, severe pain, anxiety and depression.  *Id.* at 7.

Plaintiff's medical records document treatment and records from: Miners' Colfax Medical Center; UNM Health Sciences Center; The New Mexico Behavioral Institute; Taos Colfax Community Services; Nighthawk Radiology Services; Margaret Conolly, M.D.; S.E.D. Medical Laboratories; TriCore Reference Laboratories; Lovelace Women's Hospital; La Familia Primary Care; Mark Bayliss, PA-C; Loretta Conder, M.D.; Marc Kagan, PA-C; Misbah D. Zmily, M.D.; and Jameela B. Tiku, M.D.  [*Docs. 16* and *17*].  Plaintiff's medical records also include: two Mental Status Examinations by Michael A. Cummings, Ph.D., one dated November 6, 2006 (*Doc. 16-1* at 12-16), and one dated January 14, 2008 (*Doc. 16-2* at 53-57); two Mental Residual Functional Capacity Assessments, one by Scott R. Walker, M.D., dated November 14, 2006 (*Doc. 16-1* at 18-21), and one by JLeRoy Gabaldon, Ph.D., dated January 24, 2008 (*Doc. 16-3* at 16-19); two Psychiatric Review Techniques, one by Scott R. Walker, M.D., dated November 14, 2006 (*Doc. 16-1* at 22-35), and one by JLeRoy Gabaldon, Ph.D., dated January 24, 2008 (*Doc. 16-3* at 2-15); and two Case Analyses, one by Scott R. Walker, M.D., dated February 14, 2007 (*Doc. 16-2* at 25), and one by David P. Green, M.D., dated March 12, 2007 (*id.* at 26).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 21, 2006, the alleged onset date of Plaintiff's disability. [*Doc. 15-3* at 13].  At step two, the ALJ found that Plaintiff has the following severe impairments: "hepatitis C, abdominal pain, a personality disorder, and a major depressive disorder." *Id.*  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 14.

Before step four, the ALJ determined that Plaintiff has the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff can perform only occasional kneeling, crouching or crawling, and must avoid interaction with crowds. *Id.* at 15.  In support of the RFC finding, the ALJ stated that, while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment. *Id.* at 16. The ALJ stated that "[o]verall, the evidence fails to support [Plaintiff's] allegation of disabling symptoms and limitations." *Id.* at 19.  In support of this finding, the ALJ noted that the evidence shows that Plaintiff's mental symptoms respond well to psychotropic medications, and that Plaintiff has been noncompliant with medications and treatment, which "clearly suggests that [Plaintiff's] symptoms may not have been as bothersome as she has attempted to portray in connection with this appeal." *Id.*  The ALJ also noted that, regarding Plaintiff's abdominal pain, "the evidence shows that [Plaintiff's] weight loss has stabilized and that medical treatment has worked generally well to

relieve her symptoms." *Id.* The ALJ further stated that the evidence shows that Plaintiff can "concentrate sufficiently to read, and work on crafts and puzzles," and that Plaintiff "is independent in taking care of her personal needs, performing light household chores, preparing meals, and handling her finances." *Id.* The ALJ noted that Plaintiff received low GAF ratings indicating severe psychological symptoms, but that those ratings were given when Plaintiff was noncompliant with medications and/or treatment, and was using drugs. *Id.* The ALJ stated that, "[w]hen in compliance with treatment, [Plaintiff's] daily activities demonstrate that she is capable of greater activity than these low GAF ratings suggest." *Id.* Finally, the ALJ noted that her RFC determination was consistent with the opinions of state agency medical consultants who have found that Plaintiff is not disabled. *Id.* At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work, so the ALJ proceeded to the fifth step. *Id.* at 20.

At the fifth and final step, the ALJ noted that Plaintiff was 42 years old at the time of her alleged onset date, has at least a high school education, and is able to communicate in English. *Id.* The ALJ stated that the VE was asked "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as a mail sorter, a flat work tierer, and a gate guard. *Id.* at 20-21. The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* at 21. The ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V. Analysis

Plaintiff contends that the ALJ erred in her RFC assessment because the ALJ did not properly consider Dr. Cummings' evaluations of Plaintiff. [*Doc. 21* at 9-10]. Plaintiff states that, pursuant to SSR 85-16 and SSR 96-8p, the ALJ should have based her RFC assessment on medical source statements and should have addressed Plaintiff's nonexertional capacities "to understand, remember and carry out instructions; to respond appropriately to supervision, co-workers, and work situations; and to deal with changes in a routine work setting." *Id.* Plaintiff contends that the ALJ should have included a narrative discussion describing how the evidence supports each of her conclusions and should have considered and addressed each medical source opinion and explained why the opinion was not adopted. *Id.* at 10. Plaintiff states that the ALJ should have contacted Dr. Cummings for more information if she believed his reports were inadequate or incomplete, and that the ALJ was required to give adequate reasons for rejecting Dr. Cummings' opinion. *Id.* at 10. As relief, Plaintiff asks the Court to remand the case for a new hearing for the proper evaluation of the evidence. *Id.* at 11.[2]

In his response, Defendant disputes Plaintiff's contentions, and states that the ALJ's decision was properly supported by the evidence in the record and the ALJ used correct legal standards in evaluating the evidence, so the Commissioner's final decision should be affirmed. [*Doc. 22* at 3-10].

---

[2]In a footnote, Plaintiff states that the third occupation the VE testified that Plaintiff could perform -- gate guard -- is semi-skilled, and that "[o]n remand, the ALJ should be reminded to investigate any conflict between her hypothetical question and the Dictionary of Occupational Titles and the VE testimony." [*Doc. 21* at 11, n.14] (citing SSR 00-4p, 2000 WL 1898704). Plaintiff does not contend that this is an error requiring remand of her case. The Court, therefore, does not consider this to be a claim upon which Plaintiff seeks relief. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994) ("[P]erfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review.") (citations omitted).

Defendant states that the ALJ's RFC assessment properly considered the medical evidence, including Dr. Cummings' assessments, and provided sufficient reasons for discounting Dr. Cummings' opinions. *Id.* at 5-8.

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, medical signs and laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. *Id.* at *5. With regard to mental impairments, the ALJ's "determination of [a claimant's] mental RFC involves the consideration of evidence, such as: [h]istory, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension." SSR 85-16, 1985 WL 56855 at *2.

Here, the ALJ determined that Plaintiff has the RFC to perform light work, except that Plaintiff can perform only occasional kneeling, crouching or crawling, and must avoid interaction with crowds. [*Doc. 15-3* at 15]. In making this finding, the ALJ discussed Dr. Cummings' November 6, 2006 and January 14, 2008 mental status examinations of Plaintiff. *Id.* at 16-18. In

addition, the ALJ considered and discussed the following medical evidence: Dr. Conolly's October 4, 2006 psychiatric evaluation of Plaintiff; Plaintiff's records and diagnoses from her inpatient treatment at The New Mexico Behavioral Health Institute from January 23, 2007 to January 30, 2007; progress notes from Plaintiff's treating psychiatrist (Dr. Conolly) from October 11, 2006 to January 27, 2010; and Plaintiff's records and treatment regarding her abdominal pain. *Id.* at 16-19. The ALJ stated, with regard to Plaintiff's mental condition, that the evidence shows: that her mental symptoms respond well to psychotropic medications; that Plaintiff has been noncompliant with medications and treatment; that Plaintiff is able to concentrate sufficiently to read and work on crafts and puzzles; and that Plaintiff is independent in taking care of her personal needs, performing light household chores, preparing meals, and handling her finances. *Id.* at 19. In support of these findings, the ALJ cites to Dr. Conolly's treatment note that Plaintiff was terminated from mental health treatment due to her noncompliance (citing *Doc. 16-3* at 24), and Dr. Cummings' 2006 evaluation (citing *Doc. 16-1* at 15). *Id.* The ALJ further explained that she found that Plaintiff's low "GAF ratings were given during times when [Plaintiff] was noncompliant with medications and[/]or treatment, and using drugs," and that "[w]hen in compliance with treatment, [Plaintiff's] daily activities clearly demonstrate that she is capable of greater activity than these low GAF ratings suggest." *Id.*

The Court finds that the ALJ's RFC assessment complies with the requirements of SSR 96-8p and SSR 85-16 because the ALJ based her assessment on all of the relevant evidence in the record. Plaintiff contends that the ALJ should have addressed Plaintiff's nonexertional capacities, namely: to understand, remember and carry out instructions; to respond appropriately to

supervision, co-workers, and work situations; and to deal with changes in a routine work setting. [*Doc. 21* at 9-10]. However, the ALJ did address these nonexertional capacities in her RFC assessment, by noting Dr. Cummings' findings regarding these abilities. [*Doc. 15-3* at 16-18]. In his 2006 examination, Dr. Cummings found that Plaintiff was either unlimited or only moderately limited in all of these abilities (*see Doc. 16-1* at 15), and, in his 2008 examination, Dr. Cummings found that Plaintiff was markedly limited in her ability to interact with the public, coworkers, and supervisors, but either unlimited or moderately limited in all of the other areas (*see Doc. 16-2* at 56). While the ALJ's RFC conflicts with Dr. Cummings' finding of a marked limitation in Plaintiff's ability to interact with the public, coworkers, and supervisors, the ALJ adequately explained why that finding was not made part of the RFC determination by showing how the evidence in the record demonstrates that Plaintiff's mental limitations respond well to psychotropic medications, and that Plaintiff has been noncompliant with those medications and with mental health treatment. [*Doc. 15-3* at 19]; *see also Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) ("The failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment."); and *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir.1990) (finding that the claimant's alleged impairment was properly discounted where the claimant failed to follow prescribed treatment regime). The ALJ also explained that Plaintiff's low GAF scores were given during times when Plaintiff was noncompliant with medications and/or treatment, and that Plaintiff's daily activities show that she is capable of greater activity than the low GAF scores indicate. [*Doc. 15-3* at 19]. In addition, the ALJ included a limitation in the RFC determination that Plaintiff should avoid interaction with crowds, which partially addresses Dr. Cummings' marked

limitation finding. *Id.* at 15.  The Court, therefore, finds that the ALJ adequately considered Dr. Cummings' evaluations in her RFC determination and gave sufficient reasons for rejecting a portion of one of his opinions.

The Court also rejects Plaintiff's contention that the ALJ should have re-contacted Dr. Cummings for additional information. [*Doc. 21* at 10]. The ALJ did not find that either the record or Dr. Cummings' information was inadequate or incomplete, so there was no need for the ALJ to re-contact Dr. Cummings for additional information. *See* 20 C.F.R. § 404.1520b(c)(1) (explaining that a medical source may be re-contacted if the ALJ has insufficient evidence to determine whether a claimant is disabled).

Plaintiff also contends that the ALJ should have included a narrative discussion describing how the evidence supports each of her conclusions, and should have considered and addressed each medical source opinion and explained why the opinion was not adopted. [*Doc. 21* at 10]. The Court finds that the ALJ provided adequate support for each of her conclusions, and adequately addressed the medical source opinions in her opinion. An ALJ "is not required to discuss every piece of evidence" when making her decision, but is required to discuss "the evidence supporting [her] decision, . . . [as well as] the uncontroverted evidence [s]he chooses not to rely upon . . . [and] significantly probative evidence [s]he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citations omitted). Plaintiff does not state what evidence she thinks the ALJ failed to consider or describe, and thus, fails to develop the issue sufficiently for judicial review. *See Murrell*, 43 F.3d at 1389 n.2 ("[P]erfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review.") (citations omitted). Nevertheless, the Court finds that the record

supports the ALJ's RFC determination and that Plaintiff's mental symptoms respond well to psychotropic medications, but Plaintiff was noncompliant with medication and treatment. For example, when Plaintiff was admitted to The New Mexico Behavioral Health Institute in January 2007, she was not taking the psychotropic medications that she had taken in the past for her depression. [*Doc. 16-2* at 4]. After taking a psychotropic medication, Plaintiff's mood improved and she displayed no agitation or suicidal behavior, and Plaintiff's discharge prognosis was fair to poor depending on her compliance with medication and follow up. *Id.* at 5. In addition, Plaintiff's treating psychiatrist found that Plaintiff's condition improved somewhat with medications and counseling, but Plaintiff was noncompliant with medications, therapy and substance abuse counseling, and was even terminated from her mental health treatment for non-compliance. *See* [*Doc. 16-2* at 37-41] and [*Doc. 16-3* at 24-28]. All of this evidence was cited by the ALJ and supports the ALJ's finding that Plaintiff's allegations of mental limitations can be managed by psychotropic medications and that Plaintiff's "noncompliance clearly suggests that her symptoms may not have been as bothersome as she has attempted to portray in connection with this appeal." [*Doc. 15-3* at 19]. Moreover, the ALJ's finding that Plaintiff's abilities to concentrate sufficiently to read and work on crafts and puzzles, and her independence in taking care of her personal needs, household work, preparing meals and handling her finances, is supported by evidence in the record provided by Dr. Cummings.. *See id.* (citing *Doc. 16-1* at 15). Plaintiff does not cite to any uncontroverted evidence the ALJ chose not to rely upon, or any significantly probative evidence she rejected, other than Dr. Cummings' opinions, which the Court explained *supra* were adequately considered by the ALJ. The Court, therefore, finds that Plaintiff's claim should be denied.

## VI.  Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner and **DENY** Plaintiff's motion.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 21)* is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**THE HONORABLE LOURDES A. MARTÍNEZ
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent**